UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: Linda Merritt § § Linda Merritt v. MidAtlantic Farm Credit ACA § et al. § _____ § § | CASE NO. 11-18134 Chapter 13 ADV PRO. 13-00532 |

## MEMORANDUM

Defendant J. Michael Pelet (the "Pelet"), by and through his attorney, Richard N. Lipow, submits the following in support of his objections to Debtor's Adversary Proceeding. While not specifically named, Mr. Pelet was served with the Adversary Complaint and was referred to as a "successor in interest," in connection of a transfer of real property mentioned in paragraph 5 of the Complaint.

I. Statement of Facts

The tenuous connection upon which Merritt has based her action against Mr. Pelet is the property he purchased from MidAtlantic Farm Credit, ACA, a creditor of Merritt. While debtor's complaint details email exchanges and highlights various transactions and litigation that took place in at least two states, Debtor Merritt omitted all mention of this event, the event that is exclusively associated with the "injury" central to her complaint. The "event" is the June 28, 2010, contempt order of the Honorable Vice Chancellor William B. Chandler, Judge of Court of Chancery of the State of Delaware. In a detailed, multi-page order, Chancellor Chandler set forth in detail Merritt's actions warranting the court's attention and found Merritt and her controlled entities to be in contempt of his court's orders. The Chancellor sanctioned Merritt for her conduct and ordered that she and her controlled entities "are not entitled to any recovery"

from the specified assets, which assets included the above-mentioned property purchased by Mr. Pelet.

The Chancellor additionally ordered that Merritt "shall not be entitled to any distribution of [those assets] at the conclusion of their dissolution and winding up" of the Delaware Court matter by the Court Appointed receiver, Kurt Heyman. It is clear from the court's determination Merritt's acts as well as her failure to act, as ordered, were the reasons for imposition of sanctions. See attached Order of Court.

Subsequent to the issuance of the contempt order Mr. Heyman transferred[1] property owned by Unionville Land, LLC to MidAtlantic. This is the property, referred to as "Apple Grove Property" in the Complaint, located at 1635 West Doe Run Road, East Marlborough, Pennsylvania, was subsequently purchased by Pelet from MidAtlantic.

Linda Merritt neither directly owned any of the properties that were the subject of the Delaware Court order, or real property that is the subject of this Adversary Proceeding, nor has she averred such in the AP case.

A review of the debtor's statement and schedules reveals that Ms. Merritt has no exemptions remaining after application of federal statutory exemptions to property unrelated to the AP case.

Merritt's request to reverse the 2010 sale of the Apple Grove property is the only claim associated with this defendant.

---

[1] Heyman conveyed the property to MidAtlantic Farm Credit by deed dated September 8, 2010, and recorded in Chester County Record Book 8002 and Page 458. MidAtlantic subsequently sold and transferred the property to J. Michael Pelet, by Deed dated December 2, 2010, and recorded on January 14, 2011, by the Chester County Recorder of Deeds at Record Book 8099 and Page 2237 et seq.

2

II. Argument

**The Debtor Is Not A Party Who Can Assert a § 548 Claim**

The debtor may not pursue the instant matter. A Chapter 13 debtor may not, absent any specific statutory grant, invoke the trustee's powers. See, e.g., In re Funches, 381 B.R. 471, 495–496 (Bankr.E.D.Pa.2008). In the present case, the Complaint fails to plead facts relevant to a specific statutory grant of avoidance powers contained within § 522(h). Section 522(h) sets forth certain criteria for allowing a debtor to invoke a trustee's avoidance powers:

> (h) The debtor may avoid a transfer of property of the debtor or recover a setoff to the extent that the debtor could have exempted such property under subsection (g)(1) of this section if the trustee had avoided such a transfer, if—
>
> (1) such transfer is avoidable by the trustee undersection 544, 545, 547, 548, 549, or 724(a) of this title ...; and
>
> (2) the trustee does not attempt to avoid such transfer.

The requirements of § 522(g)(1) are as follows:

> (g) Notwithstanding sections 550 and 551 of this title, the debtor may exempt under subsection (b) of this section property that the trustee recovers under section 510(c)(2), 542, 543, 550, 551, or 553 of this title, to the extent that the debtor could have exempted such property under subsection (b) of this section if such property had not been transferred, if—
>
> (1)(A) such transfer was not a voluntary transfer of such property by the debtor; and
>
> (B) the debtor did not conceal such property; ...

These statutory provisions work together to create two separate sets of conditions that must be satisfied for a debtor to invoke the trustee's § 548 avoidance powers. Section 522(h) is satisfied when 1) the trustee fails to invoke the avoidance powers; and, 2) the Chapter 13 debtor could have claimed the subject property exempt had the trustee exercised the avoidance powers. Funches, 381 B.R. 471, 492 (Bankr.E.D.Pa.2008) (citing In re Myers, 262 B.R. 445, 447

3

(Bankr.N.D.Ind.2001). Section 522(g)(1) allows a debtor the right to exempt property if two conditions are satisfied, "that: (1) the transfer of property was involuntary and (2) the debtor did not conceal the property involved." <u>Funches</u> at 492.

The Debtor has averred that the transfer was avoidable pursuant to § 548(a)(1)(B), saying that the section "allows the debtor to void any transfer of a[] [pre-petition] interest of a debtor in property of debtor …" Complaint at para. 6. The Complaint, however, is devoid of any facts touching upon the statutory grant of the trustee's avoidance powers. Simply put, there is no mention of, or any action by the Chapter 13 Trustee. Additionally, there is no reference as to whether the property, subject of the Complaint, is in any way exempt and/or that an exemption has been utilized in Plaintiff's Chapter 13 bankruptcy to exempt the property. A review of the Plaintiff's Schedule C filed in the main case reveals that the Debtor has neither exempted the property subject of the Adversary Proceeding nor has she any exemptions available for such property.

The Debtor may not maintain her actions in her capacity as a chapter 13 debtor without satisfying the requirements of 11 U.S.C. § 522(g)(1) and (h). Because she cannot do so, the § 548 actions must fail and this case should be dismissed.

**This Court Should Abstain From Hearing State Law Claims in this Case**

Stating that Merritt was in contempt of orders dated September 14, 2009, November 9, 2009 and February 25, 2010, the Delaware state court ordered that she and "her controlled entities…are not entitled to any recovery from …..Unionville Land LLC[2]…" and that she was "removed as a member of all Receivership Entities and shall not be entitled to any distribution of Receivership Entities' assets at the conclusion of their dissolution and winding up." Id. at par. 3a.

---

2 Title owner of the Apple Grove property immediately before its transfer to this defendant's grantor, MidAtlantic Farm Credit, ACA.

4

and b. The aforesaid order of Delaware Chancery court sets forth the Debtor's actions that warranted the entry of the contempt order. Moroever the Court also ordered that Merritt and her controlled entities "are not entitled to any recovery" from the Apple Grove property among others. See Order dated 6/28/10, R&R Capital v. Linda Merrit et al., CA No. 3989-CC (Del CC 2010).

Courts are empowered to decide whether or not to abstain from an entire case. Partial abstention permits a bankruptcy court to defer from hearing specific issues, including issues that are within the bankruptcy court's core jurisdiction. 28 U.S.C. § 1334(c). In re D'Angelo, 475 B.R. 424, 440 (Bkrtcy.E.D.Pa.,2012)

The test for permissive abstention requires a bankruptcy court to employ a balancing test that considers the weight of numerous factors. § 1334(c) authorizes a bankruptcy court to abstain from hearing matters within its jurisdiction "in the interest of justice, or in the interest of comity with State courts or respect for State law." 28 U.S.C. § 1334(c). Courts of this district have recognized at least twelve separate factors that a court should consider when evaluating whether to apply permissive abstention. These factors include:

(1) the effect on the efficient administration of the estate;

(2) the extent to which state law issues predominate over bankruptcy issues;

(3) the difficulty or unsettled nature of applicable state law;

(4) the presence of a related proceeding commenced in state court or other non-bankruptcy court;

(5) the jurisdictional basis, if any, other than 28 U.S.C. § 1334;

(6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case;

(7) the substance rather than the form of an asserted "core" proceeding;

(8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court;

(9) the burden on the court's docket;

(10) the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties;

(11) the existence of a right to a jury trial; and

(12) the presence of non-debtor parties.

In re Carriage House Condominiums L.P., 415 B.R. 133, 146–47 (Bankr.E.D.Pa.2009).

All of the above factors weigh heavily in favor of abstention; the instant AP case is nothing more than a distraction from a matter for which a plan has not yet been confirmed. Furthermore, it is highly likely that this case may become a procedural "nightmare."[3]

It is obvious that the Debtor is attempting to utilize the Bankruptcy Court to circumvent the consequences of her own bad behavior in state court.[4]   Concerns of comity should weigh heavily in favor of permissive abstention because the relief sought by the Debtors has a great potential to conflict with and/or render a nullity the Chancellor's contempt order. In re Kessler, 430 B.R. 155, 167 (Bankr.M.D.Pa.2010) (recognizing that concerns of comity caused by "a great potential to conflict with or render a nullity, an underlying state court proceeding" weighed in favor of permissive abstention).

The injuries complained of by the Debtor in this AP care are *entirely* self-inflicted.   They are a result of Debtor's refusal to obey the direct, clear and patent orders of a state court judge.

---

[3] In Debtor's state court case the Chancellor referred to that case's procedural history as a "veritable nightmare." R & R Capital, LLC v. Buck & Doe Run Valley Farms, LLC, 2008 WL 3846318, at *2 (Del.Ch. Aug.19, 2008).

[4] The Federal courts have also acknowledged Debtor's bad behavior. See R & R Capital LLC v. Merritt  426 Fed.Appx. 85, 90, 2011 WL 1668981, 4 (C.A.3 (Pa. 2011) and R & R Capital, LLC v. Merritt  632 F.Supp.2d 462 (E.D.Pa.,2009)

As a result of her disobedience, the state court Judge, sitting in equity, stripped her and her entities of rights in the property Linda Merritt now falsely complains was fraudulently transferred.   This court should abstain.

**The Debtor Claims Are Barred By the Rooker-Feldman Doctrine**

The Rooker–Feldman doctrine stems from the statutory proposition that federal district courts are courts of original, and not appellate, jurisdiction. Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284–85, 125 S.Ct. 1517, 161 L.Ed.2d 454 (US 2005). Only the United States Supreme Court has original jurisdiction to review final judgments from a state's highest court. 28 U.S.C. § 1257(a).  See also Funches, 381 B.R. 483-484.

While the Rooker–Feldman doctrine does not apply to prevent bankruptcy court from hearing an adversary proceeding brought in a Chapter 13 case to set aside transfers as fraudulent, this debtor is not asking bankruptcy court to examine such a transfer.  Instead, as a state court loser, she is complaining of injuries caused by a state court judgment finding her in contempt. This judgment was rendered before the federal court proceedings commenced.  The Debtor is now inviting federal court review to reject those judgments. Funches 381 B.R. 483-484.  The debtor's bad behavior resulting in the state court's contempt order, and not the sale of the Apple Grove property by MidAtlantic, is what stripped Unionville Land LLC (the entity which actually owned the Apple Grove property) of any interest in the Apple Grove property.

This court does not have jurisdiction to review the Delaware Chancery Court order nor should it.

7

III. <u>Conclusion</u>

For the reasons set forth above, the defendant requests that this court enter the attached order dismissing the Debtor's adversary proceeding.

<pre>                              /s/ Richard N. Lipow
                              Richard N. Lipow
                              Attorney at Law
                              629 Swedesford Road
                              Malvern PA 19355
                              Telephone: (610) 251-2500; FAX (610) 889-9564
                              richard@lipowlaw.com</pre>