**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| In re | : | **Chapter 13** |
| **Linda Merritt,** | : | |
| **Debtor.** | : | **Case No. 11-18134 (JKF)** |
| | | |
| **Linda Merritt,** | : | |
| **Plaintiff,** | : | |
| **v.** | : | |
| **MidAtlantic Farm Credit, ACA.,** *et al*, | : | |
| **Defendants.** | : | **Adversary No. 13-0532** |

**<u>OPINION</u>**

BY:   **Jean K. FitzSimon
United States Bankruptcy Judge**

Before the Court are two motions (collectively the "Motions") involving the

complaint ("Complaint").  Defendant, Cheshire Land Preservation Fund

("Cheshire"), moves to have the Complaint, which asserts a fraudulent

conveyance claim against it under Bankruptcy Code § 548(a)(1)(B), dismissed

with prejudice.  In contrast, plaintiff/debtor, Linda Merritt ("Debtor"), moves the

Court for leave to file an amended complaint ("Amended Complaint") which would

add a derivative claim against Cheshire for breach of fiduciary duty and

dissipation of assets.  The derivative claim would be brought by Debtor on behalf

of an entity called Merritt Land LLC ("Merritt Land") of which Debtor alleges she is

a member and creditor.  Debtor's relationship to Merritt Land will be explained in

detail below. Upon review of the Motions, the Court concludes that Cheshire's

motion shall be granted and Debtor's motion shall be denied.[1]

## II.  BACKGROUND[2]

### A.  The Entities

In or before December of 2004, Debtor and two New York entities

---

[1]  Debtor contends that the Court may not enter a final judgment in this proceeding under <u>Stern v. Marshall</u>, ___ U.S. ___, 131 S.Ct. 2594 (2011).  This issue is far from settled.  <u>Compare Tyler v. Bruce Banks (In re Tyler)</u>, 493 B.R. 905, 908-920 (Bankr. N.D. Ga. 2013) (holding that bankruptcy court had jurisdiction to issue a final order in adversary proceeding where debtor-plaintiff sought to avoid transaction as a fraudulent transfer under § 548) , <u>Carr v. Britton (In re International Auction and Appraisal Services LLC)</u>, 493 B.R. 460, 463-65 (Bankr. M.D. Pa 2013) (concluding that the bankruptcy court lacked constitutional authority to enter final order or judgment on fraudulent transfer claim). Since Cheshire did not file a proof of claim in Debtor's bankruptcy case, Debtor's argument may have merit; however, the Supreme Court has not decided this precise issue.  <u>See Executive Benefits Insurance Agency v. Arkison</u>, 134 S. Ct. 2165, 2172 (2014) (not resolving the issue of whether fraudulent conveyance claim against a non-creditor pursuant to § 548 constituted a <u>Stern</u> claim because the parties did not contest the Ninth Circuit's conclusion that the plaintiff's claim did).  In any event, if this Court lacks the constitutional authority to issue a final order in this matter, then this Opinion constitutes the Court's proposed findings of fact and conclusions of law under 28 U.S.C. § 157(c)(1). <u>See id.</u> at 2174 (holding that fraudulent conveyance claim was within the scope of 28 U.S.C. § 157(c)(1)); <u>Feldman v. ABN AMRO Mortgage Group, Inc.</u>, 515 B.R. 443, 451 (E.D. Pa. 2014) (citing to 28 U.S.C. § 157(c)(1) and concluding, with regard to <u>Stern</u> claims, that the bankruptcy court has authority to "submit proposed findings of fact and conclusions of law" to the district court for review).

[2]  When the Complaint is cited in the text as support for a factual statement, the Court is treating the allegation in the Complaint as true for purposes of deciding the Motions.

known as R&R Capital LLC and FTP Capital LLC (collectively referred to

hereinafter as "R&R") formed nine or ten Delaware limited liability companies (the

"Entities").  Complaint ¶ 7.  Merritt and R&R were co-equal owners of the Entities,

having a 50% interest in each of them.  Id. The Entities invested in real estate

and thoroughbred horses.  Id.  The Debtor was appointed the managing member

of the Entities.  Id.  Merritt Land was one of the Entities.  Id. ¶ 7 n.1.[3]

## B.  Purchase of Apple Grove Property

In 2003, ninety acres of land on Apple Grove Road in East and West

Marlborough Townships, Chester County, Pennsylvania (the "Apple Grove

Property"), were purchased, on behalf of Merritt Land, for $1.3 million.  Complaint

¶ 10.[4]  The purchase price was funded by Debtor's capital contribution to Merritt

Land of $400,000 and a loan to Merritt Land from MidAtlantic Farm Credit, A.C.A.

("MidAtlantic"), in the amount of $975,000.  Id.  The loan to Merritt Land was

---

[3]  The Entities also included: Unionville Land, LLC; Hope Land, LLC; Moore
Street, LLC; Pandora Farms, LLC; PDP Properties, LLC, Grays Ferry Properties, LLC;
Kick the Knack Farms, LLC; and Buck & Doe Run Valley Farms, LLC.  Complaint n.1.
Each of the Entities had its own operating agreement.  See Complaint ¶ 7 n.1.
Pandora Farms, LLC changed to PDF Properties, LLC, and PDF Properties, LLC in turn
owns 100% of Pandora Farms, LLC and Pandora Racing, LLC. See id.

[4]  The Complaint alleges that "Debtor entered into an agreement" to purchase
the Apple Grove Property but other allegations in the pleading clarify that the property
was purchased by or on behalf of Merritt Land.  For example, paragraph 14 of the
Complaint alleges that "[i]n November 2007, MidAtlantic commenced foreclosure
proceedings against Merritt Land for the Apple Grove Property[.]" Complaint ¶ 14
(emphasis added).  Also, paragraph 33 of the Complaint alleges: "Heyman's transfer to
Cheshire of Merritt Land's Apple Grove [P]roperty for $1,250,000 . . . is an avoidable
conveyance[.]"  Id. ¶ 33 (emphasis added).

memorialized in a note and secured by a mortgage on the Apple Grove Property.
Id. Debtor personally guaranteed payment of the note. Id.

### C.  Litigation

From 2005 through 2008, R&R initiated six separate lawsuits in four

different jurisdictions against Debtor and/ or the Entities, allegedly "seeking her

removal as Managing Member of the Entities and the dissolution thereof."

Complaint ¶ 13.  One of the lawsuits was filed by R&R against Debtor in the

Chancery Court in Delaware.[5]  See R&R Capital, LLC v. Merritt, 2009 WL

2937101, at *1 (Del. Ch. September 3, 2009).[6] In this action, R&R sought a

declaration that, in August of 2008, it had properly removed Debtor as the

Managing Member of the Entities for "cause" pursuant to the Entities' operating

agreements.  Id.

On September 3, 2009, the Chancery Court issued a letter decision ("Letter

---

[5]  Prior to filing the action against Merritt, R&R had filed a lawsuit directly against the Entities in the Chancery Court of Delaware seeking their dissolution.  See R&R Capital, LLC v. Buck & Doe Run Valley Farms, LLC, 2008 WL 3846318 (Del. Ch. August 19, 2008).  In the adversary proceeding against the Entities, Chancellor Chandler ruled that, in the Entities' Operating agreements, R&R waived its right to seek the Entries' dissolutions. Id. at *3-*7.

[6]  The Court takes judicial notice of the court decisions and orders cited herein as they are matters of public record.  See Southern Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Group, Ltd., 181 F.3d 410, 426-27 (3d Cir. 1999).  The Court notices "the fact of their filing and the rulings issued by the court of record."  Hynoski v. Columbia County Redevelopment Authority, 941 F. Supp.2d 547, 556 (M.D. Pa. 2013).  Moreover, at the hearing on the Motions, the parties consented to having the Court review the orders and decisions of the Delaware state courts, including the Chancery Court, in ruling on their Motions.  Recording of Hearing on December 9, 2014, at 2:19 p.m.

Decision") ruling in R&R's favor on summary judgment and authorizing the

appointment of a receiver to "wind up the business and affairs of the Entities."[7] Id.

In the Letter Decision, the Chancery Court observed as follows:

> The Entities' operating agreements set forth the basis for a manager's removal for cause as follows:
>
>> The Manager may be removed as Manager for "Cause" upon the written demand of [Plaintiffs].  Such written demand shall set forth with specificity the facts giving rise to such Cause.  As used herein, a removal for "Cause" shall mean that the Manager to be removed shall have (a) engaged in fraud or embezzlement, (b) committed an act of dishonesty, gross negligence, willful misconduct, or malfeasance that has had a material adverse effect on the Company or any other Member, or (c) has been convicted of any felony.

2009 WL 2937101, at *2.  Describing the conduct which constituted "cause" for

R&R's removal of the Debtor as Manager, the Chancery Court opined:

> The removal notice was based on Merritt's conduct that was subject to an action entitled R & R Capital v. Merritt,

---

[7]  After the Letter Decision was issued, Debtor promptly attempted to appeal to the Supreme Court of Delaware but her appeals were dismissed.  See Merritt v. Buck & Doe Run Valley Farms, LLC, 984 A.2d 124, 2009 WL 3353547 (Del. Oct. 19, 2009) (table, text in Westlaw) (dismissing appeal on the grounds that Merritt was seeking to appeal an interlocutory order of the Chancery Court and the appeal was not filed in conformance with Delaware Supreme Court Rule 42); Merritt v. Buck & Doe Run Valley Farms, LLC, 981 A.2d 1173, 2009 WL 3177603 (Del. October 5, 2009) (table, text in Westlaw) (dismissing appeal on the grounds that Merritt was seeking to appeal an interlocutory order of the Chancery Court and the appeal was not filed in conformance with Delaware Supreme Court Rule 42).

<u>C.A.</u>, No. 06-1544, before Judge Mary McLaughlin of the United States District Court, Eastern District of Pennsylvania (the "Pennsylvania Action")[.] The Pennsylvania Action arose from a dispute between the parties concerning the purchase, possession and ownership of three thoroughbred "pinhooking" horses. R & R purchased the horses from Merritt's wholly-owned company, Mer-Lyn Farms, LLC. In the Pennsylvania Action, R & R sought to obtain possession of two of the pinhooking horses and sought to rescind the transaction whereby it purchased the third pinhooking horse, based on Merritt's misrepresentations regarding the health of the horses.

On April 17, 2009, Judge McLaughlin issued an Order finding in favor of R & R on its rescission and replevin claims and in favor of Merritt with regard to certain expenses associated with training and caring for the horses. <u>Judge McLaughlin found that Merritt engaged in fraud in connection with the challenged transaction</u>. In her written opinion, Judge McLaughlin specifically found that "R & R was induced to purchase [the horses] on the basis of statements by Pelullo and Merritt that were both <u>fraudulent</u> and material. . . . In these circumstances, the statement that [the horse] was one of the best horses available was a knowing misstatement not in accord with the facts and therefore fraudulent."[8]

2009 WL 2937101, at *3 (*quoting* <u>R&R Capita, LLC v. Merritt</u>, 632 F. Supp.2d 462, 479 (E.D. Pa. 2009)) (emphasis added).

Shortly after issuing the Letter Decision, the Chancery Court appointed Kurt Heyman ("Heyman") as the receiver.  Complaint ¶ 18.  On October 2, 2009,

---

[8]  Debtor moved for reconsideration of Judge McLaughlin's ruling and then appealed her ruling to the Third Circuit Court of Appeals which affirmed it. <u>See</u> <u>R&R Capital LLC v Merritt</u>, 426 Fed. Appx. 85, 2011 WL 1668981 (3d Cir. May 4, 2011). Debtor subsequently filed a petition for writ of certiorari with the Supreme Court but the petition was denied.  <u>See</u> <u>Merritt v. R&R Capital LLC</u>, 132 S. Ct. 763 (2011).

Heyman retained Barr Realty ("Barr") to evaluate the properties which the Entities owned in order to sell them.  Complaint ¶ 21.  Barr concluded that, in "as is" condition, the asking price for the Apple Grove Property should be $3,200,000 and that "[s]erious offers above $2,700,000 should be considered."  Id.  Heyman did not prepare the Apple Grove Property for sale by doing any cleaning, maintenance or minor repairs.  Id.  When the Apple Grove Property did not sell, Heyman elected to have Barr sell it at a public auction.  Id. ¶ 23.  At the public auction on April 20, 2010, the high bid for the Apple Grove Property was $1.1 million but Cheshire agreed to purchase the property for $1.25 million.  Id. ¶¶ 28, 30. This price was approximately $40,000 more than the mortgage on the property but almost $2 million less than the amount at which it was appraised by Barr and $100,0000 less than its original purchase price.  Id.  Debtor advised Heyman that she objected to the sale because it would not "generate enough funds to pay the creditors and Mer-Lyn [Farms]."  Id. ¶ 29.  Nevertheless, Heyman transferred the Apple Grove Property to Cheshire for the aforementioned amount.  Id.

On June 21, 2010, Heyman filed a motion for contempt against the Debtor in the Chancery Court in Delaware.  See Receiver's Motion for a Finding of Contempt Against Linda Merritt, Chancery Court of Delaware, Case No. 3989-CC, filed June 21, 2010.  In the motion, Heyman alleged that Debtor had engaged in various actions to frustrate his ability to expeditiously and efficiently

wind up the affairs of the Entities and that such actions were in violation of the

Chancery Court's Orders, dated September 14, 2009, November 9, 2009 and

February 25, 2010. Id.

On Friday, June 25, 2010, the Chancery Court held a contempt hearing

and gave Debtor until noon on Monday, June 28, 2010, to correct her violations of

its orders.  See R&R Capital, LLC v. Merritt, 2010 WL 2720837 (Del. Ch.

June 24, 2010) (scheduling hearing on June 25, 2010); R&R Capital, LLC v.

Merritt, C.A. No. 39890CC (Del. Ch. June 28, 2010) ("Contempt Order") (holding

Merritt in contempt of the Court's Orders dated September 14, 2009,

November 9, 2009 and February 25, 2010).  When Debtor failed to correct the

violations, the Chancery Court issued an Order, dated June 28, 2010 ("Contempt

Order"):

> (i)   holding Debtor in contempt;
>
> (ii)  removing her as a member of the Entities; and
>
> (iii) decreeing that neither she nor her controlled
>       entities was "entitled to any distribution of the
>       Receivership Entities' assets at the conclusion of
>       their dissolution and winding up."

Id. ¶ 3(b).

On or about July 28, 2010, Debtor appealed the Contempt Order to the

Supreme Court of Delaware.  The Delaware Supreme Court dismissed the

appeal on the grounds that the Contempt Order was an interlocutory order[9] and

Debtor had failed to comply with Delaware Supreme Court Rule 42 which sets

forth the procedure and requirements for appeals from interlocutory orders.  See

Merritt v. R&R Capital, LLC, 5 A.3d 631, 2010 WL 3688765, at *1 (Del. Sept. 22,

2010) (table, text in Westlaw).

On or about January 10, 2011, Heyman filed a receiver's motion to dismiss

in the Chancery Court.  Complaint ¶ 40.  On February 21, 2011, the Chancery

Court granted the motion.  R&R Capital LLC v. Merritt, 2013 WL 1008593, at *8

(Del. Ch. March 15, 2013).

On March 23, 2011, Merritt filed an appeal from the Chancery Court's final

order to the Delaware Supreme Court.  Id.  Debtor argued, inter alia, that the

Chancery Court: (i) erred by granting summary judgment in R&R's favor and

removing her as the Managing Member of the Entities; and (ii) abused its

discretion in entering a contempt order and issuing sanctions against her.  See

Merritt v. R&R Capital, LLC, 2011 WL 2835704 (Del. June 30, 2011) (Appellant's

Opening Brief on appeal to the Delaware Supreme Court).  Based on and for the

reasons "stated by the Court of Chancery in its September 3, 2009, June 28,

---

[9]  The Supreme Court of Delaware opined that the Contempt Order was an
interlocutory order because there were ongoing proceedings in the Chancery Court
case, specifically matters "involving the process of winding up the affairs of the nominal
defendants, after which the independent receiver may apply to the Court of Chancery
for an order of dismissal." See Merritt v. R & R Capital, LLC, 5 A.3d 631, 2010 WL
3688765, at *1 (Del. Sept. 22, 2010) (table, text in Westlaw).

2010 and March 15, 2013 decisions," the Delaware Supreme Court affirmed the

rulings of the Chancery Court.  See Merritt v. R & R Capital, LLC, 69 A.3d 371,

2013 WL 3305666 (Del. June 26, 2013) (table; text in Westlaw).

Thereafter, Debtor filed a petition for a writ of certiorari to appeal the

Delaware Supreme Court's ruling against her to the United States Supreme

Court.  On October 6, 2014, the Supreme Court denied Debtor's petition.  See

Merritt v. R & R Capital, LLC, __ U.S. __, 135 S. Ct. 47, 83 USLW 3185 (2014).

### D.  Bankruptcy Filing

On October 20, 2011, Debtor filed a Voluntary Petition under Chapter 13 of

the Bankruptcy Code.  See Bankruptcy Case No. 11-18134, Docket Entry No. 1.

Almost two years later, on October 21, 2013, Debtor commenced this adversary

proceeding against Cheshire and MidAtlantic.  Since Debtor and MidAtlantic

reached a settlement of the disputes between them, Cheshire is the only

remaining defendant in the proceeding.[10]

Debtor asserts one claim against Cheshire.[11]  Debtor seeks to avoid the

transfer of the Apple Grove Property to Cheshire as a fraudulent transfer

---

[10]  Counts II, III and IV of the Complaint were directed at MidAtlantic. However, Merritt and MidAtlantic entered into a Stipulation of Voluntary Dismissal ("Stipulation") which the Court approved on October 15, 2014.  Docket Entry No. 94. While the Stipulation only references Counts III and IV of the Complaint, Debtor's counsel confirmed with the Court that the settlement was complete as to MidAtlantic and that it is no longer a defendant in this proceeding.  Recording of Hearing on December 9, 2014, at 2:20 p.m.

[11]  Debtor's purported claim against Cheshire is set forth in Count I of the Complaint.

pursuant to § 548(a)(1)(B).[12] Debtor alleges that she received less than

equivalent value for the transfer of the property and that she was rendered

insolvent by the transfer.  See Complaint ¶ 60.  Notably, § 548(a)(1)(B) of the

Code authorizes the "trustee" to avoid certain transfers and not a Chapter 13

debtor.

On December 3, 2013, Debtor filed a motion to compel ("Motion to

Compel") in her bankruptcy case seeking to have the Court issue an order

compelling the Chapter 13 Standing Trustee to, *inter alia*: (i) substitute in, join or

---

[12]  Importantly, the parties' memoranda in support of and in opposition to the Motion to Dismiss and Motion to Amend include arguments regarding whether the Contempt Sanction, or the sanctions imposed therein, can be avoided pursuant to § 548.  See e.g., Cheshire Land Preservation Fund's Motion to Dismiss Adversary Proceeding Complaint with Prejudice ¶ 39 ("The Adversary Complaint's central condition is that the Contempt Order and Apple Grove Auction should be avoided pursuant to section 548(a)(1)(B) of the Bankruptcy Code[.]"); Debtor[']s Response to Cheshire Land Preservation Fund's Motion to Dismiss the Adversary Complaint at 7 ("Debtor is not seeking to challenge the finding of contempt by the Delaware Chancery Court [but] . . . is seeking to challenge the involuntary transfer of $10 million in claims and her share of $5 million in Entity assets she had prior to the [C]ontempt [O]rder[.]"); Reply of Cheshire Land Preservation Fund to Debtor's Objection to Cheshire Land Preservation Fund's Motion to Dismiss Adversary Proceeding with Prejudice at 3 ¶ 2 ("Debtor's strategy to challenge the Contempt Order's sanctions is the product of her inability to avoid the sale of the Apple Grove Property to Cheshire under section 548."); Memorandum of Law (1) in Support of Plaintiff's Motion for Leave to Amend Adversary Complaint and (2) in Support of Plaintiff's Objection to Cheshire's Motion to Dismiss Adversary Complaint with Prejudice at 18 ("To be clear the contempt order is not being challenged.  Merritt is challenging (i) the voiding of her 50% membership interest in the Entities and (ii) the involuntary transfer and voiding of over $15 million of claims and assets ....in violation of Section 548.").  However, Debtor's claim against Cheshire only refers to avoiding Heyman's transfer of the Apple Grove Property to Cheshire.  There is no reference whatsoever in the Complaint to the Contempt Order or the sanctions which were imposed against Merritt therein.

ratify the instant adversary proceeding as well as another adversary proceeding;[13]

(ii) abandon to her the claims asserted in the adversary proceeding complaints; or

(iii) grant her derivative standing to prosecute the complaints. See Bankruptcy

Case No. 11-18134, Docket Entry No. 196 (Motion to Compel).  In the Motion to

Compel, Debtor alleged that Heyman sold the Apple Grove Property for $1.25

million when it was "worth at least $3.2 million."  Motion to Compel ¶ 24.  Debtor

also alleged that "[o]n October 4, 2013, Debtor requested the Chapter 13

Standing Trustee to substitute in, join or ratify the adversary complaints" and that,

on October 16, 2013, "the Trustee declined to substitute in the actions." Id. ¶ 25.

Debtor further alleged that "[f]rom the allegations in the complaint, there can be

no dispute that the recovery of any avoided transfers would benefit the estate in

this case, and not just provide the prevailing parties in the state case with a

windfall to the detriment of other creditors."  Id. ¶ 39.

On December 13, 2013, Cheshire filed an objection to the Motion to

Compel.  See Bankruptcy Case No. 11-18134, Docket Entry No. 215 (Cheshire's

Objection to Motion to Compel). In its objection, Cheshire alleged facts in dispute

of Debtor's contention that $1.25 million for the Apple Grove Property was less

than "reasonably equivalent value" and argued that, based on the facts which it

alleged, the sale price received by Heyman was, as a matter of law, the

"reasonably equivalent value" of the property.  See id. ¶¶ 20-23; 50-55.

---

[13]  The other adversary proceeding is Merritt v. R&R Capital, LLC and FTP Capital, LLC, Adversary Proceeding No. 13-0533.

MidAltantic also objected to Debtor's Motion to Compel.  See Bankruptcy Case No. 11-18134, Docket Entry No. 219 (MidAtlantic's Objection).  MidAtlantic argued that the adversary proceedings would not benefit the estate because Debtor never owned an interest in the properties that were the subject of the avoidance actions.  See id. at 2 (Debtor "does not have and never had an interest in either of the properties that are the subject of the avoidance causes of action and therefore they [ ] never would have been property of her bankruptcy estate.").

On December 17, 2013, a hearing was held on the Motion to Compel. Debtor, Cheshire and MidAtlantic were each represented by counsel at the hearing.

At the beginning of the hearing, Debtor's counsel presented oral argument in support of the Motion to Compel.  Transcript, dated December 17, 2013 ("Tr."), at 5-6.  However, after being advised by the Court that the issue of whether the Trustee unjustifiably refused to bring the avoidance actions at issue was "largely a factual one," Debtor's counsel opted to call the Chapter 13 Trustee as a witness. Id. at 6-12. The Trustee testified that, in October of 2013, he received an email from Debtor's counsel along with two draft adversary complaints which listed the Trustee as the plaintiff.[14] Id. at 13. The Trustee further testified that, in the email, Debtor's counsel asked him to agree to having the complaints filed in his name, told him that the statutes of limitation were soon to expire on the

_____

[14]  As previously noted, Debtor identified "October 4, 2013" as the date on which she provided the Trustee with the draft complaints.  See Motion to Compel ¶ 23.

13

claims, and advised him that a response to the Debtor's request was needed

"very quickly."[15]  Id. at 15.  The Trustee observed that, when he received the

email, he was concerned with the time pressure being put upon him to make a

quick decision, particularly since Debtor's bankruptcy case had been pending for

almost two years, and that, as he was attempting to sort through the facts alleged

in the draft complaints, it became apparent to him that there had been litigation in

New York, Delaware and the Eastern District of Pennsylvania involving the

Debtor and the entities which were named as defendants in the draft

complaints.[16]  Id. at 16.  The Trustee explained that he ended up concluding that

---

[15]  Pursuant to 11 U.S.C. § 546(a)(1)(A), the avoidance action against Cheshire had to be filed within two years from entry of the Debtor's order for relief in her bankruptcy case.  Since the "commencement of a voluntary case" under Chapter 13 of the Bankruptcy Code "constitutes an order for relief," see 11 U.S.C. § 301(b), the adversary proceeding had to be filed on or before October 21, 2013.  See Fed. R. Bankr. P. 9006(a).

[16]  Paragraph 13 of the Complaint alleges:

> From 2005 through 2008, R&R initiated six (6) separate lawsuits in four (4) different jurisdictions against Debtor, [and] the Entities seeking her removal as Managing Member of the Entities and the dissolution thereof.

Complaint ¶ 13.  The footnote to this paragraph states;

> From 2005 through 2008 R&R instituted 6 actions in 4 jurisdictions against Debtor and the Entities: R&R Capital LLC and FTP Capital LLC v Linda Merritt Supreme Court Of The States Of New York Index No. 604080/05, R&R Capital LLC and FTP Capital LLC v. Linda Merritt et al, 2007 U.S Dist. Lexis 78754 Civ. No. 07-2869, R&R Capital LLC and FTC Capital LLC v. Linda Merritt, Hope Land LLC and PDF Properties LLC, Court of Common Pleas Chester County Pennsylvania Case No. 08-04813, R&R Capital LLC v. Linda

(continued...)

there was no way that he could conduct a reasonable investigation sufficient to

comply with Federal Rule of Bankruptcy Procedure 9011 within the short time

frame which Debtor had provided. Id. at 15-16.  The Trustee's testimony in this

regard is set forth in the following colloquy between Debtor's Counsel and the

Trustee:

> Debtor's Counsel:
>
> > Would you please explain to us why you believe that –
> > you don't feel it's in the estate's interest to prosecute
> > these cases?
>
> Trustee:
>
> > Well, there -- let me start by saying that when I got the
> > letter from you, it was in early October and my
> > recollection is that coupled with the request was a
> > statement to the effect that you felt that the statute of
> > limitations potentially could expire in these cases and
> > that you wanted a response very quickly, that's my
> > recollection. Now, there were some other letters, there
> > was another correspondence  from Ms. Merritt and I
> > might be getting them confused. But part of my concern
> > was that this case was filed in October of 2011 and I
> > was getting a letter asking me to put my name on
> > complaints two years after the case -- almost two years
> > after the case had been filed with a, oh, by the way, the
> > statute of limitations is going to expire soon, so get back
> > to me pretty quickly, if you will. So my concern was not

---

[16](...continued)
Merritt and Mer-Lyn Farms, LLC 632 F. Supp.2d 462 (2009),
R&R Capital LLC and FTP Capital v. Buck & Doe Run Valley
Farms LLC et al 2008 WL 3846318 (Del. Ch. 2008), R&R
Capital LLC and FTP Capital LLC v. Merritt et al 2009 WL
2937101 (Del. Ch. 2009).

Complaint ¶ 13 n.2.

just what the substance of the complaints were, but the fact that I was being put in the position of having to make a decision where I was going to be the plaintiff in two cases against other entities and I was basically given a very short period of time to make that evaluation. So in looking at those documents, going back and trying to sort though what had happened here, it became apparent to me that there was litigation in New York, Delaware, I think in Pennsylvania as well. I think -- I know there was some sort of an order by Judge McLaughlin in the District Court, which apparently specifically found that the Debtor had acted fraudulently. I think there might have also been litigation in Chester County.

And I only relate this because, as I looked through this matter I said, I'm being asked to put my name on this, I've been given a very short period of time because of alleged statute of limitation issues, and I felt that I needed to get back to you very promptly because you were  expressing these statute of limitation issues, and that frankly I felt that there was very -- almost no way that I could make myself familiar enough with eight to ten years' worth of litigation that had already resulted in a judgment against the Debtor by the Chancery Court, which at that point I learned had also been sustained by the Delaware Supreme Court, I just felt that there was no way that I could permit my name to be include -- included, that's not the right word, but set forth on the complaint as the plaintiff.

Debtor's Counsel:

Let me ask you this, sir --

Trustee:

And I -- let me finish, you asked me a question. So I also, I think, raised the issue of 9011, because I felt that, you know, I have to conduct some sort of a reasonable investigation before I can sue people and I was very uncomfortable under the circumstances.

16

Tr. at 15-16.

The Trustee also testified that, despite Debtor's view of the litigation, he

recognized that there are always two sides to every story.  Id at 17.  He further

explained that he realized that the litigation was going to involve a fight and that

there was "just no way that [he] as the plaintiff could get involved in that fight."  Id.

Thereafter, Debtor's counsel asked the Trustee whether, having had more

time since October to review the draft adversary complaints and based on the

appraisals showing that the properties at issue were worth "millions of dollars

more than what the properties were sold for," he thought there was a basis for

"proceeding under the fraudulent conveyance theory."  Id. at 17-18.  The Trustee

answered "no" and then explained his answer, stating:

> First of all, in looking through the papers it became clear
> that these properties were not owned by the Debtor,
> they were owned by LLCs, who are – which are not
> parties to this action. So the Debtor, as far as I can tell,
> has no interest in these properties. Secondly, there's a
> contempt order that was issued by I believe the
> Delaware Chancery Court and which you have said that
> you're not going to challenge, and it's the papers that
> you filed. That order says that the Debtor is going to
> removed as a member of all of the LLCs involved and
> that she will not receive any proceeds from any of the
> liquidation of the receivership properties. So arguably,
> even if she had owned these properties, which the
> record is clear, at least on the papers that have been
> filed, that she didn't own the properties, the contempt
> order seems to me to make it abundantly clear that
> there's no way that the Debtor gets any proceeds from
> any of these sales.
>
> In addition, this matter was litigated in the

Chancery Court, you were granted -- there was a motion for relief granted where you were appointed as special counsel to pursue an appeal with the Delaware Supreme Court. I have not read the opinion of the Delaware Supreme Court, all I have heard is that it was -- whatever that was appealed in the Chancery Court was sustained. So the way I look at it, I just do not see how -- under the factual scenario that I just painted – -- how there was any chance of getting any money out of these alleged fraudulent conveyances without somehow upsetting or invalidating the existing judgment of the Chancery Court as apparently sustained by the Supreme Court, I just don't see it.

So for all of those reasons, I just -- I think that my instincts initially, based on what I described to you as I have reviewed the papers and read some of the cases -- but also understand that I've had a week now to do this and I can't say that this is the most thorough research job I've ever done, but I've seen enough that, while it's easy I think to sort of throw these numbers around, 19 million and this was wrong and this should have been done and we have these appraisals, there's also a concept that runs through these cases, including the Napper case, which is a *Rooker-Feldman* Third Circuit case, which talks about the fact -- and I haven't researched this thoroughly, but it strikes me that this is -- has to be the way the law is, which is that if there is a sale under the auspices of a that that [sic] as a legal issue makes reasonably equivalent value under Section 548, it satisfies that reasonably equivalent value. So if there were an appraisal for ten million and the property sold for five million, but it was done under the auspices of the court, which I believe this was by the receiver and everything was -- you know, reports were submitted to the Chancery Court, they were approved, he was discharged, I just don't think that those appraisals, I'm not sure that they're relevant at this point, I'm not sure that they count for anything. I think if the receiver did his job and he did it and nobody said that he didn't do it right, or if they did and his actions were sustained, then I think it's -- that ship sailed.

Id. at 18-20.

Other than Debtor, no parties sought to examine the Trustee and no other witnesses were called to testify.  Id at 23.  No evidence, whatsoever, was presented on the issue of whether the outcome of the adversary proceeding, if prosecuted by the Trustee in his name or by the Debtor in the event she was granted derivative standing, would confer a benefit on the estate.

With the evidentiary record closed, the Court provided each party with the opportunity to present oral argument.[17]  Id. at 24-37.  At the close of the hearing, the Court denied the Motion, ruling that Debtor had failed to show that: (i) the Trustee had improperly exercised his business judgment in declining to pursue the adversary proceedings in his name; and (ii) the adversary proceedings would confer a benefit on the estate.[18]  Id. at 42.

---

[17]  Debtor's Counsel, the Trustee, Cheshire's counsel and MidAtlantic's counsel accepted the Court's invitation to provide oral argument and/or closing comments.  Tr. at 24-37.

[18]  On the issue of whether Debtor made a showing that the adversary proceedings would benefit the estate, the Court opined:

> With regard to a Chapter 13 case, you would have had to show me that something was going to come into the estate, you've made no showing that something is going to come into the estate. The record is very clear that Ms. Merritt did not own these properties, Ms. Merritt admits she did not own these properties. These properties were owned by two LLCs, she is a member of those LLCs. The law in the State of Delaware is clear that as a member of the LLC she has no interest in the property. Her signing the mortgage does not give her an interest in the property, her signing a guarantee does not give her an interest in the property. While she certainly has an interest in determining what happens to these properties and to all of these claims, that interest is not cognizable in this

(continued...)

## E.  Cheshire's Motion to Dismiss

On April 2, 2014, Cheshire filed its motion to dismiss Debtor's Complaint in

this adversary proceeding. On May 12, 2014, Debtor filed her response to the

motion to dismiss.

Cheshire moves to dismiss the Complaint on two grounds.  Pursuant to

Fed. R. Civ. P. 12(b)(1), Cheshire challenges the Debtor's standing to assert a

claim against it under Bankruptcy Code § 548(a)(1)(B).  Pursuant to Fed. R. Civ.

P. 12(b)(6), Cheshire argues that the Debtor's Complaint fails to state a claim

upon which relief can be granted.

─────────────────────

[18](...continued)
court in any way, shape or form because it is not an interest that the Court
recognizes. She has no interest in property that this Court can possibly
sustain for her.

* * *

In addition, I'm at a loss to try and figure out precisely how any of these
actions would benefit the estates. Ms. Merritt can only act in the event that
the Trustee's action is not brought and he either abandons it to her or I
make the finding that in fact the action was an action that would have
brought money into the estate. Since there's been nothing provided to this
Court by the Debtor that would demonstrate that money would come into
this court, into this estate or is money that is owed to this Debtor, I cannot
find that there is any possibility that she would have the right to bring
these actions.

Tr. at 41-42.

Notably, at the hearing on the Motions, Debtor's counsel argued that, in the
event the Court concluded that the issue of whether the adversary proceeding would
benefit the estate was a critical factor in its decisions herein, the Court should hold an
evidentiary hearing on that issue because it was a disputed issue of fact.  The Court
agreed.  However, a review of the transcript from the hearing on the Motion to Compel
shows that Debtor had an opportunity to present evidence on the factual issue and
failed to do so.

## F.  Debtor's Motion to Amend

Debtor moves for leave to file an amended complaint ("Amended

Complaint") which would add a derivative claim against Cheshire for breach of

fiduciary duty and dissipation of assets based on the Debtor's standing as a

member and creditor of the Entities.  See Docket Entry No. 73 (Amended

Complaint).  Cheshire objects to the Debtor's motion on the ground that granting

leave to amend would be futile because the Debtor "does not have direct or

derivative standing to pursue this adversary action[.]" Objection of Cheshire Land

Preservation Fund to Motion for Leave to Amend the Adversary Complaint at

¶ 12.

## III.  DISCUSSION

**A.      Whether Complaint Should be
          Dismissed for Lack of Standing?**

### 1.  Standard of Review

A motion to dismiss for lack of standing is "properly brought under Rule

12(b)(1), because standing is a jurisdictional matter."  Hunters United for Sunday

Hunting v. Pennsylvania Game Commission, ___ F. Supp.2d ___, 2014 WL

2770228, at *2 (M.D. Pa. June 18, 2014) (citing Ballentine v. United States, 486

F.3d 806, 810 (3d Cir.2007)).  See also Smith v. One West Bank, FSB (In re

Smith), 459 B.R. 571, 572 (Bankr. M.D. Pa. 2011) (noting that the standing of a

Chapter 13 debtor to utilize the strong arm powers of the trustee implicates

subject matter jurisdiction because, if the debtor lacks standing, then the

bankruptcy court lacks subject matter jurisdiction to address the merits of the

case).  When a defendant moves to dismiss under both Rules 12(b)(1) and

12(b)(6), the court must first consider the defendant's motion under Rule 12(b)(1)

because "[w]hether the complaint states a cause of action on which relief could

be granted is a question of law ... [that] must be decided after and not before the

court has assumed jurisdiction over the controversy." Bell v. Hood, 327 U.S. 678,

682 (1946).  See also Mielo v. Aurora Huts, LLC, 2015 WL 106631, at * 2 (W.D.

Pa. January 7, 2015) (citing Int'l Ass'n of Machinists & Aerospace Workers v.

Northwest Airlines, 673 F.2d 700, 711 (3d Cir.1982)) ("Absent standing, and by

extension subject matter jurisdiction, the court does not possess the power to

decide the case, and any disposition it renders is a nullity.").

A motion brought pursuant to Rule 12(b)(1) "may present either a facial or

a factual challenge to the court's subject matter jurisdiction."  O'Neill v. Cook, 828

F. Supp.2d 731, 735 (D. Del. 2011).  In either situation, "the plaintiff bears the

burden of proving subject matter jurisdiction."  Soft Pretzel Franchise Systems,

Inc. v. Taralli, Inc., 2013 WL 4774086, at *2 (E.D. Pa. September 6, 2013).

Explaining the difference between a facial and a factual attack on subject matter

jurisdiction, the district court in O'Neill v. Cook, supra, stated:

> In reviewing a facial challenge under Rule 12(b)(1), the
> standards relevant to Rule 12(b)(6) apply. In this regard,
> the court must accept all factual allegations in the

complaint as true, and the court may only consider the complaint and documents referenced in or attached to the complaint. <u>Gould Elec. Inc. v. United States</u>, 220 F.3d 169, 176 (3d Cir. 2000). In reviewing a factual challenge to the court's subject matter jurisdiction, the court is not confined to allegations of the complaint, and the presumption of truthfulness does not attach to the allegations in the complaint. <u>Mortensen v. First Fed. Sav. and Loan Ass'n</u>, 549 F.2d 884, 891 (3d Cir.1977). Instead, the court may consider evidence outside the pleadings, including affidavits, depositions and testimony, to resolve any factual issues bearing on jurisdiction. <u>Gotha v. United States</u>, 115 F.3d 176, 179 (3d Cir.1997).

828 F. Supp.2d at 735.

Generally, when a party challenges a court's subject matter jurisdiction before filing an answer to the complaint as Cheshire did here, its challenge is viewed as a facial attack on jurisdiction. <u>Constitution Party of Pennsylvania v. Aichele</u>, 757 F.3d 347, 358-59 (3d Cir 2014). However, before Cheshire filed its Motion to Dismiss, Debtor filed her Motion to Compel. Cheshire and MidAtlantic filed their Objections. The Objections disputed Debtor's assertions that (i) the proposed adversary proceedings, if successful, would benefit the estate; and (ii) the sale price which Cheshire paid for the Apple Grove Property was less than reasonably equivalent value. Thereafter, the Court held the evidentiary hearing at which Debtor was given the opportunity to present evidence in support of her Motion to Compel. At the hearing, Debtor's counsel called the Trustee as a witness and questioned him about his reasons for refusing to bring the instant

adversary proceeding in his name.  Under these circumstances, the Court finds it appropriate to treat Cheshire's Motion to Dismiss as a factual rather than a facial challenge to subject matter jurisdiction.  See Barardi v. Swanson Memorial Lodge No. 48 of Fraternal Order of Police, 920 F.2d 198, 200 (3d Cir. 1990) (noting that a factual attack on subject matter jurisdiction may be made before an answer to a complaint is filed when factual allegations disputing subject matter jurisdiction are raised by the opposing party); compare Constitution Party of Pennsylvania v. Aichele, 757 F.3d 347, 358-59 (3d Cir. 2014) (concluding that the district court erred in treating the defendant's challenge to its subject matter jurisdiction as a factual attack because the relevant facts had yet to be disputed).  Accordingly, the Court "may consider evidence outside of the pleadings."  Wright v. United States, 2014 WL 1910498, at *1 (M.D. Pa. May 13, 2014).

Importantly, the Court informed the parties at the hearing on their Motions that, in ruling on them, the Court intended to rely upon the Motion to Compel, Cheshire's Objection thereto and the transcript from the hearing on the Motion to Compel.  Recording of Hearing on December 9, 2014, at 2:32 - 2:36 p.m.[19]  The

---

[19]  At the hearing on the parties' Motions on December 9, 2013, Debtor's counsel asserted that the Court should apply the standard applicable to motions for summary judgment in ruling on Cheshire's Motion to Dismiss.  Recording of Hearing on December 9, 2014, at 2:34 - 2:35 p.m. He argued that the Motion to Dismiss should only be granted if there were no genuine issues of material fact. However, as noted above, an attack on subject matter jurisdiction is not akin to a motion for summary judgment.  There are facial and factual attacks on subject matter jurisdiction and the standard to be applied in ruling on such an attack depends on which type is at issue.

24

Court made this announcement to ensure that no one would be blind-sided by its

consideration of these items.[20]

## 2.  Legal Analysis

Cheshire contends that this Court lacks subject matter jurisdiction over the

claim asserted against it in Debtor's Complaint because Debtor, as a Chapter 13

debtor, lacks standing to assert a claim under § 548 of the Code.[21]  In opposition,

---

[20]  Neither party voiced any objection to the Court's review of the above-listed items.

[21]  Cheshire also argues, in conclusory fashion, that Debtor's § 548 claim is barred by collateral estoppel and the Full Faith and Credit Statute.  See Cheshire Land Preservation Fund's Motion to Dismiss Adversary Proceeding Complaint with Prejudice ¶ 50.  Since Cheshire failed to provide any explanation of how these principles apply to the instant matter, the Court shall not address these arguments.

In addition, Cheshire argues that the Court lacks subject matter jurisdiction because Debtor's claim against it is barred by the *Rooker-Feldman* doctrine. However, if Debtor had derivative standing and could properly assert a claim under § 548, Debtor may well be correct that the *Rooker-Feldman* doctrine would not bar her claim. There is considerable authority holding that the *Rooker-Feldman* doctrine is inapplicable when a federal statute specifically authorizes a lower federal court to set aside a state court judgment.  See Sasson v. Sokoloff (In re Sasson), 424 F.3d 864, 871 (9th Cir. 2005) (observing that, "[i]n the exercise of federal bankruptcy power, bankruptcy courts may avoid state judgments in core bankruptcy proceedings" such as proceedings based on § 548); Smith v. SIPI, LLC, ___ B.R. ___, 2014 WL 4783029, at *3-4 (N.D. Ill. Sept. 22, 2014) (affirming bankruptcy court's ruling that debtors' claim under § 548 to invalidate the transfer of property that resulted from a state court tax foreclosure proceeding was not barred by the *Rooker-Feldman* doctrine because the debtors were not arguing that the state court applied state tax foreclosure law improperly but, rather, that the transfer could be invalidated under the Federal Bankruptcy Code); Anderson v. Wade Cordell (In re Infinity Business Group, Inc.), 497 B.R. 495, 500-501 (Bankr. D. S.C. 2013) (ruling that *Rooker Feldman* doctrine did not bar Chapter 7 trustee's fraudulent transfer and preference causes of action, even though a determination by the bankruptcy court might contradict state court judgment and state court ruling on Rule 60(b) motion, because the causes of action asserted independent bases for relief expressly provided for in the Bankruptcy Code); In re Miller, 2009 WL 3398716, at *4 (Bankr. D. Mass.

(continued...)

Debtor cites <u>Official Committee of Unsecured Creditors of Cybergenics Corp. v.</u>

_____

[21](...continued)
October 16, 2009) (concluding that the *Rooker-Feldman* doctrine was inapplicable to debtor's adversary proceeding because she was not claiming that the state court judgment was incorrect but, rather, that the state court judgment was avoidable under Bankruptcy Code § 548); <u>Funches v. Household Finance Consumer Discount Company (In re Funches)</u>, 381 B.R. 471, 483-85 (Bankr. E.D. Pa. 2008) (concluding that *Rooker-Feldman* doctrine was inapplicable to the debtor's adversary proceeding because she was not seeking to have the bankruptcy court review the merit of the state court verdict but was, rather, seeking to have the verdict avoided); <u>see</u> <u>also</u> <u>Iannini v. Deutsche Bank National Trust Company (In re Iannini)</u>, 2010 WL 2104244, at *6-*9 (W.D. Pa. May 24, 2010) (emphasis added) (rejecting the debtor's argument that the *Rooker-Feldman* doctrine did not apply to her claims since they were "brought under specific provisions of the Bankruptcy Code, namely § 544 and § 548" on the ground that the debtor's claims were not *properly* raised under the Bankruptcy Code); <u>but</u> <u>see</u> <u>824 South East Boulevard Realty, Inc. v. Christopher Ryan (In re 824 South East Blvd. Realty, Inc.)</u>, 2012 WL 3561981, at * 5 (Bankr. S.D. N.Y. August 17, 2012) (*quoting* <u>Hoblock v. Albany County Board of Elections</u>, 422 F.3d 77, 86-87 (2d Cir. 2005)) ("Even though Bankruptcy Code § 548 is an independent federal cause of action by which a debtor can avoid fraudulent transactions, not dependent on State Law, '*Rooker-Feldman* bars a federal claim, whether or not raised in state court, that asserts injury based on a state judgment and seeks review and reversal of that judgment[.]'").

The three cases to which Cheshire cites as support for its proposition that "[t]he Rooker Feldman doctrine precludes this Court from reviewing the merits of the Contempt Order and sanctions imposed thereunder," <u>see</u> Reply of Cheshire Land Preservation Fund to Debtor's Objection to Cheshire Land Preservation Fund's Motion to Dismiss the Adversary Complaint with Prejudice ¶28 (listing three cases), <u>do</u> <u>not</u> address whether the *Rooker-Feldman* doctrine prevents bankruptcy courts from avoiding state court rulings under § 548. <u>See</u> <u>Chaney v.  Grigg (In re Grigg)</u>, 2013 WL 5771870 (Bankr. W.D. Pa. Oct. 23, 2013) (no discussion of § 548; rather, the court addressed the issue of whether the *Rooker-Feldan* doctrine barred the bankruptcy court from vacating a state court's postpetition sentencing order arising from a prepetition contempt finding when the state court had addressed the issue of the applicability of the automatic stay before holding the sentencing hearing);  <u>In re Bunting</u>, 2011 Bankr. LEXIS 5548, at *24-25 (Bankr. E.D. Mich. Sept. 29, 2011) (no discussion of whether sanctions that are issued by a state court can be avoided pursuant to § 548); <u>Jonas v. Jonas (In re Jonas)</u>, 2010 WL 3245517 (Bankr. D. Mont. Aug. 12, 2010) (bankruptcy court dismissed three claims in the plaintiff's complaint but did not dismiss the claim for avoidance of a judgment lien which had been imposed on the debtor's property as a sanction for debtor's contempt of court). Accordingly, these three cases do no support Cheshire's argument that the *Rooker-Feldman* doctrine bars Debtor's § 548 claim against it.

Chinery, 330 F.3d 548 (3d Cir. 2003) (en banc), wherein the Third Circuit opined

that bankruptcy courts may utilize their equitable powers to approve derivative

avoidance actions by creditors' committees in Chapter 11 cases "where a debtor-

in-possession unreasonably refuses to pursue an avoidance action," and

requests this Court to extend the Third Circuit's holding to Chapter 13 cases.

In Geiger v. Federal Home Loan Mortgage Corp. (In re Weyandt), 544 Fed.

Appx. 107 (3d Cir. 2013),[22] the appellant/debtor argued, similarly to Debtor in the

instant proceeding, that "the Chapter 11 derivative standing found in Cybergenics

should be extended to the Chapter 13 context." Id. at *110.  The Third Circuit

explained that, in asserting her argument, the debtor faced "two hurdles." Id.

She had to "explain why the Chapter 11 derivative standing found in Cybergenics

should be extended to the Chapter context." Id.  In addition, she had to show that

derivative standing was appropriate because the Chapter 13 trustee failed to

carry out her "duties in declining to initiate the avoidance action directly."  Id.

Because the debtor failed to show that a grant of derivative standing would be

appropriate under the facts and circumstances of her case, the Third Circuit did

not address the issue of "whether derivative standing may be appropriate in some

---

[22]  Significantly, the Third Circuit issued its decision in Cybergenics, supra, *before*
the hearing was held on Debtor's Motion to Compel. Indeed, the Trustee even referred
to the case during the hearing.  See Tr. at 27.  Accordingly, contrary to the Debtor's
contention, Cybergenics does not constitute an intervening change in the law.  See
Debtor[']s Response to Cheshire Land Preservation Fund's Motion to Dismiss the
Adversary Complaint at 15-16.

Chapter 13 contexts." Id.  However, the Third Circuit noted that, if the derivative

standing issue were to be addressed, it would "require an in-depth examination of

the form and purpose of Chapter 13 bankruptcies." Id.

In the instant case, the Court ruled at the close of the hearing on Debtor's

Motion to Compel that the Debtor failed to show that the Trustee violated his

fiduciary duty by refusing to bring the avoidance actions in his name.  Given the

importance of this issue to the Debtor, the Court opted to re-assess its ruling,[23]

examining the Complaint in detail along with the parties' Motions and memoranda

as well as the transcript from the hearing on the Motion to Compel, and the Court

is satisfied that its original ruling was correct.  The Trustee did not violate his

fiduciary duty by refusing to commence the instant adversary proceeding in his

name.

---

[23]  The Third Circuit has held that a court may reconsider an issue that it previously resolved "if any of the following 'extraordinary circumstances' are present: '(1) there has been an intervening change in the law; (2) new evidence has become available; or (3) reconsideration is necessary to prevent clear error or a manifest injustice.'"  See American Civil Liberties Union v. Mukasey, 534 F.3d 181, 188 (3d Cir. 2008) (quoting Council of Alternative Political Parties v. Hooks, 179 F.3d 64, 69 (3d. 1999)).

In a memorandum of law which Debtor filed on the day before the Court's hearing on the Motions, Debtor argued that the law of the case doctrine is inapplicable here and that the Court should reconsider its previous ruling which denied Debtor's request for derivative standing to bring this adversary proceeding because Merritt's Fourth Amended Chapter 13 Plan specifically stated that the Debtor had filed the Complaint. As the Court pointed out to Debtor's counsel at the hearing on the Motions, the Chapter 13 Plan's reference to the instant adversary proceeding did not have the magical effect of granting the Debtor derivative standing to bring it.  Recording of Hearing on December 9, 2015, at 2:35 p.m.

At the hearing on the Debtor's Motion to Compel, the Trustee identified and thoroughly explained his reasons for refusing to bring the avoidance actions which the Debtor requested him to file.  Among the reasons which the Trustee gave for refusing to bring the actions are the following:

(1)     He did not receive Debtor's counsel's email requesting him to file the draft adversary complaints in his name until October of 2013 and he had insufficient time, before the time limitation for filing the avoidance claims was going to expire, to conduct a reasonable investigation into the background of the litigation involving the Debtor in New York, Delaware and the Eastern District of Pennsylvania in order to sign the complaints with the Trustee as the plaintiff in compliance with Rule 9011;

(2)     He knew that: (i) there was another side to Debtor's "story," (ii) the defendants in the adversaries would not acquiesce to the relief being sought but would fight against it; and (iii) there was no way that he wanted to become involved in the fight;

(3)     The properties which were at issue in the adversary proceedings were not even owned by Debtor but were owned, instead, by limited liability companies which were not being named as parties in the adversary proceedings;

(4)     Even if the Debtor owned the properties at issue in the proceedings, the Contempt Order made it abundantly clear that the Debtor was not entitled to any of the proceeds from the sale of the properties; and

(5)     Since Heyman sold the properties at issue under the auspices of the Chancery Court, which approved the sales and discharged Heyman as the receiver, the properties were sold, as a matter of law for reasonably equivalent value regardless of the appraised value of the properties.

The Trustee's reasons for refusing to bring the avoidance claims in his name are sound.

Indeed, it was Debtor and her counsel who acted unreasonably in waiting until nearly two years after the Debtor commenced her bankruptcy case to provide the Trustee with the draft complaints and ask him to acquiesce in bringing them in his name before the applicable two year time limitation expired.[24] Although Debtor may have been hoping that she would be vindicated in her appeal to the Delaware Supreme Court or that the United States Supreme Court would grant her petition for writ of certiorari and she would, thereby, regain her membership in the Entities, nothing prevented her from moving forward with her avoidance claims in the bankruptcy court while her appeal or petition were pending.   By failing to provide the Trustee with sufficient time to become familiar with the factual background giving rise to the allegations of the Complaint[25] and the history of the litigation in New York, Delaware and the Eastern District of Pennsylvania, Debtor thwarted the Trustee's ability to conduct a proper

---

[24]  Seventeen days, including weekends, is plainly insufficient time for a Trustee, who has an extensive caseload and many obligations, to review a draft complaint which: (i) makes reference to litigation in multiple jurisdictions which has been pending for years; and (ii) seeks to avoid transfers that were made by a receiver who was appointed in state court to replace the debtor as the managing member of limited liability companies based on a district court's finding that she committed fraud.

[25]  Significantly, the allegations in the Complaint refer to acts and events which occurred prior to the date (October 20, 2011) when Debtor filed her bankruptcy case. Consequently, there is no reason the Complaint could not have been drafted immediately upon or _soon_ after Debtor filed her bankruptcy case.

investigation into the allegations of the draft complaints. Having made her bed,
Debtor must lie in it.  The standard which the Third Circuit has espoused for
derivative standing cannot be met by a debtor who makes an eleventh hour
request to the Chapter 13 Trustee to commence an adversary proceeding in his
name when the Chapter 13 Trustee reasonably declines the request because he
has lacks sufficient time to investigate the allegations of the debtor's draft
complaint.

In addition, the Trustee's position that he did not want to bring the
avoidance actions in his name become he did not want to become entangled in
Debtor's "fight" with the defendants is justified by the following factors: (I) the
adversary complaints which the Trustee was being asked to file revealed that the
Debtor had been litigating against R&R for many years in multiple forums; (ii)
Debtor's interests in the LLCs which owned the properties that were transferred
were eliminated in a contempt order that was issued by a state court; and
(iii) Debtor had already sought reconsideration of the contempt order and
appealed it to the state's highest court.

Lastly, the Trustee's viewpoint that the avoidance claims would be
unsuccessful because the price at which Heyman sold the real properties at
issue, including the Apple Grove Property, would be held to satisfy
the"reasonably equivalent value" provision in § 548(a)(1)(b)(i) based on <u>BFP v.</u>
<u>Resolution Trust Corp</u>., 511 U.S. 531 (1994), was a tenable conclusion. Heyman

31

sold the Apple Grove Property to Cheshire for $150,000 more than the highest

bid that was received at the public auction on April 20, 2010.  Moreover, the

Chancery Court impliedly approved the sale of the Apple Grove Property for

$1.25 million when it granted Heyman's motion to dismiss.[26]

In sum, the Court concludes that the Trustee's reasons for refusing to bring

the avoidance actions in his name were well-founded and, therefore, that the

Trustee justifiably refused to bring the avoidance actions in his name.

Consequently, Debtor has failed to show that a grant of derivative standing would

be appropriate under the circumstances of the instant matter.

## B.    Whether the Complaint Should be Dismissed for Failure to State a Claim Upon Which Relief May be Granted?

### 1.  Standard of Review

A motion to dismiss pursuant to Rule 12(b)(6) "tests the legal sufficiency" of

a claim.  Glenn v. DelBalso, 2014 WL 2720885, at *1 (M.D. Pa. June 13, 2014).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter,

accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v.

Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S.

544, 570 (2007)).  A claim is plausible "when the plaintiff pleads factual content

that allows the court to draw the reasonable inference that the defendant is liable

---

[26]  According to the Complaint and the Amended Complaint, Heyman's motion to dismiss informed the Chancery Court that the Apple Grove Property was sold "at a private auction for $1,250,000."  Complaint ¶ 36(b)(vi); Amended Complaint ¶ 41(b)(vi).

for the misconduct alleged." Id.  In ruling on a Rule 12(b)(6) motion, a court

"generally consider[s] only the allegations contained in the complaint, exhibits

attached to the complaint and matters of public record." Schmidt v. Skolas,

770 F.3d 241, 249 (3d Cir. 2014) (*quoting* Pension Benefit Guar. Corp. v. White

Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir.1993)).

In Santiago v. Warminster Township, 629 F.3d 121 (3d Cir. 2010), the

Third Circuit articulated the following three step approach for determining the

sufficiency of a complaint:

> First, the court must "tak[e] note of the elements a
> plaintiff must plead to state a claim." Second, the court
> should identify allegations that, "because they are no
> more than conclusions, are not entitled to the
> assumption of truth." Finally, "where there are
> well-pleaded factual allegations, a court should assume
> their veracity and then determine whether they plausibly
> give rise to an entitlement for relief."

Id. at 130 (*quoting* Ashcroft v. Iqbal, 556 U.S. 662, 675 & 679 (2009)) (footnote

omitted).   The Third Circuit more recently applied this three step approach in

Connelly v. Steel Valley School District, 706 F.3d 209 (3d Cir. 2013).

## 2.  Legal Analysis

The elements of a claim under § 548(a)(1)(B) are the following: (1) the

debtor had an interest in the property; (2) the interest was transferred within two

years of the filing of the bankruptcy petition; (3) the debtor was insolvent at the

time of the transfer or became insolvent as a result thereof; and (4) the debtor

received less than equivalent value in exchange for such transfer.  See In re

<u>Gutpelet</u>, 137 F.3d 748, 751 (3d Cir. 1998).  The factual allegations in Debtor's

Complaint do not establish that Debtor ever owned the Apple Grove Property.

Rather, the allegations show that Debtor owned an interest in the entity, namely

Merritt Land which owned the property.  <u>See</u> Complaint ¶¶ 14, 28, 60.  While

Debtor may have been a member of Merritt Land when the Apple Grove Property

was sold to Cheshire, she did not own any interest in Merritt Land's assets or

property.  <u>See</u> 6 Del. C. § 18-701 ("A limited liability company interest is personal

property.  A member has no interest in specific limited liability company

property.").  Because Debtor has not alleged that she had an interest in the Apple

Grove Property when it was transferred to Cheshire, her Complaint fails to state a

claim upon which relief can be granted.

**C.    Whether Debtor Should be Granted
        Leave to Amend the Complaint?**

### 1.  Standard of Review

The decision whether to grant a motion to amend is within the sound

discretion of the court. <u>Cardone Industries, Inc. v. Honeywell International, Inc.</u>,

2014 WL 3389112, at *4 (E.D. Pa. July 11, 2014) (*citing* <u>Zenith Radio Corp. v.

Hazeltine Research, Inc.</u>, 401 US 321, 330 (1971)).  Motions to amend pleadings

"should be liberally granted."  <u>Long v. Wilson</u>, 393 F.3d 390, 400 (3d Cir. 2004).

However, leave to amend a complaint should be denied when the amendment

would be futile.  <u>Johnson v. Predator Trucking, LLC</u>, 2014 WL 582279, at *2

(M.D. Pa February 14, 2014).

## 2. Legal Analysis

Debtor's Amended Complaint differs from her original Complaint in that it contains an additional count.  In Count V, Debtor purports to allege a derivative claim, as a member and creditor of Merritt Land, for breach of fiduciary duty and dissipation of assets against Cheshire.  See Amended Complaint ¶¶ 74-86.

Cheshire argues that Debtor cannot assert a derivative claim as a member of Merritt Land because, in the Contempt Order, the Chancery Court removed her as a member of the Entities.  Contempt Order ¶ 3(b).   Cheshire asserts that, under Delaware law, only a current and continuous member of a limited liability company has standing to assert a derivative claim on its behalf.  See Sur-Reply of Cheshire Land Preservation Fund to Debtor's Memorandum of Law (1) in Support of Plaintiff's Motion for Leave to Amend Adversary Complaint and (2) in Support of Plaintiff's Objection to Cheshire's Motion to Dismiss Adversary Complaint With Prejudice ¶¶ 30-34.

Debtor acknowledges that Cheshire correctly cites Delaware law but argues that, if the Chancery Court's "extinguishment of her 50% ownership interest in the Entities is itself an avoidable transfer under Section 548, then [she] has contemporaneous and continuous ownership, and satisfies the requirements for derivative standing under Delaware law."  Debtor's Memorandum of Law (1) in Support of Plaintiff's Motion for Leave to Amend Adversary Complaint and (2) in Support of Plaintiff's Objection to Cheshire's Motion to Dismiss Adversary Complaint With Prejudice at 16-17.   Debtor's position is unpersuasive.

First, Debtor has not alleged in the Amended Complaint that the Contempt

Order is an avoidable transfer under § 548 and no request has been made for the

avoidance of the Contempt Order pursuant to § 548. Moreover, even if the Debtor

had included specific allegations regarding the Contempt Order in the Amended

Complaint and included a claim in it specifically seeking to avoid the Chancery

Court's extinguishment of her interest in the Entities pursuant to § 548(a)(1)(B),

the claim would be futile for the same reason that her § 548(a)(1)(B) claim in the

original Complaint is being dismissed.  Even if it was permissible in the Third

Circuit for a Chapter 13 debtor to assert a derivative claim under § 548, Debtor

has not established grounds in the instant case for being permitted to do so.

Similarly, Debtor cannot pursue her claim in Count V as a creditor of Merritt

Land.  First, she is not currently a creditor of Merritt Land. The Chancery Court's

Contempt Order decreed that Debtor is not entitled to any distribution from the

dissolution and winding up of Merritt Land.  Second, creditors of an insolvent

Delaware limited liability company do not have standing to assert a derivative

action on the limited liability company's behalf.  See CML V, LLC v. Bax, 28 A.3d

1037, 1040-41 (Del. 2011) (creditors of an insolvent LLC lack standing to bring a

derivative action on the LLC's behalf).

Accordingly, the Court shall utilize its discretion and deny Debtor's motion

for leave to amend the Complaint since Debtor's amendment of the Complaint

would be futile.

## IV.  SUMMARY

For the reasons set forth above, Cheshire's motion to dismiss shall be

granted.   Moreover, since it would be futile to allow Debtor to amend the

Complaint, Debtor's motion for leave to amend shall be denied.

An Order consistent with this Opinion shall be issued.


DATED:     March 25, 2015.

_____
HONORABLE JEAN K. FITZSIMON
United States Bankruptcy Judge


Copies to:

**Linda Merritt, Plaintiff**
Linda Merritt
699 West Glenrose Rd.
Coatsville, PA  19320

**Counsel for Plaintiff**
Mark A. Cronin, Esquire
P.O. Box 711
1018 North Bethlehem Pike
Suite 203B-1
Spring House, PA 19477

**Counsel for MidAtlantic Farm Credit, A.C.A.**
Steven J. Adams, Esquire
Stevens & Lee
111 North Sixth Street
P.O. Box 679
Reading, PA 19603-0679

**Counsel for Cheshire Land Preservation Fund**
Erik L. Coccia, Esquire
Pepper Hamilton, LLP
3000 Two Logan Square
18th & Arch Streets
Philadelphia, PA 19103

**Courtroom Deputy**
Joan Ranieri